UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Martin Hoffman )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Nancy A. Berryhill, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>Defendant. ) | No. 16 CV 50050<br>Magistrate Judge Iain D. Johnston |

## **MEMORANDUM OPINION AND ORDER**

This is a social security disability appeal. Plaintiff worked for many years in engineering-type jobs. Then, in 2000, he was charged with various crimes. In 2002, he began serving a 19-and-half-year sentence. While in prison, he complained about anxiety and other psychiatric symptoms and consistently attended therapy sessions because of these problems. In 2013, he was released early based on good time credit. Soon thereafter, he filed an application for disability insurance benefits and an application for supplemental security income, alleging an onset date of November 11, 2002 (*i.e.* around the time he went to prison). On the latter application, plaintiff was found disabled beginning August 19, 2013. The specific reasons for this decision are not known by this Court, nor are they an issue in this appeal. However, plaintiff is currently receiving monthly supplemental security income payments. This case concerns the former application, and specifically whether plaintiff was disabled from November 11, 2002 (the onset date) until December 31, 2007 (the date last insured). As such, the case involves the unusual situation where all the relevant medical treatment occurred in prison.

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

A hearing was held before an administrative law judge ("ALJ") who later issued a decision finding plaintiff not disabled during this five-year period. The ALJ found that plaintiff's anxiety disorder was a medically determinable impairment, but that it did not qualify as severe at Step Two. The ALJ gave multiple reasons for this conclusion.

The first part of the analysis focused on the objective medical evidence. The ALJ noted that, although plaintiff attended numerous therapy sessions and complained consistently about psychiatric ailments while in prison, he did not have "acute symptoms or crisis situations," and "an adjustment to his medication typically brought [his fluctuating] symptoms under better control within a relatively short period of time." R. 16. The ALJ found little evidence to support plaintiff's claim of experiencing more severe symptoms. Specifically, plaintiff's therapist seemed to doubt that plaintiff was experiencing hallucinations. *Id.* ("It is not clear whether he has true hallucination[s] or [if] the reported voices are pseudo hallucinations."). Also, there was never a diagnosis of psychosis. The ALJ found it significant that plaintiff had "almost uniformly normal mental status examinations" and that he "always related well with the counselor and was entirely coherent and generally behaved appropriately." R. 16-17. The ALJ observed that plaintiff "attend[ed] scheduled [group therapy] sessions faithfully, did his homework reliably, and interacted appropriately" and that the psychiatrist overseeing his treatment failed to note "any concerns beyond routine management of medications." R. 17. The ALJ acknowledged that plaintiff reported an increase in anxiety in early 2007, but then observed that plaintiff's mental status examining findings were "not significantly abnormal" during this time and that plaintiff's counselor stated that "it appears as though he was complaining of increased frequency of panic attacks in order to meet with the therapist more frequently." *Id.* This statement, according to the

ALJ, "suggests an element of manipulation may have been present explaining the uptick in his report of anxiety." *Id.*

The ALJ next analyzed plaintiff's credibility, noting that there were a number of factors undermining plaintiff's assertions. One was plaintiff's work history before prison. The ALJ explained as follows:

> He testified that he was diagnosed with a mental disorder and experienced anxiety even prior to his incarceration in 2002. However, even though he was arrested in 2000 on the charges for which he ultimately [was] imprisoned, and thus presumably was under a great deal of stress [starting] then, his earnings record reveals that he earned over $52,000 in 2001 and over $41,000 in 2002. In other words, he was clearly able to engage in SGA right up to the time he entered prison despite mental impairments and hand tremors and significant external stressors. Further, his work was skilled, and thus required high levels of concentration and other demanding tasks.

R. 18. Another factor was plaintiff's daily activities in prison. The ALJ stated as follows:

> From all appearances based on the prison health records, the claimant's daily activities while incarcerated were relatively full. Most importantly, he worked, doing jobs such as fixing TV's and checking out tools to other prisoners. There are numerous treatment notes which include notations of "working" as part of his daily routine. For instance, [o]n November 20, 2005 a note stated "claimant discussed plan to work on TV system and expressed feeling of accomplishment" (2F/33). On January 22, 2006 the claimant reported that "his work fixing TV's as an electronic repairman keeps him busy" (2F/44). On another occasion it was noted that he was working in maintenance, checking out tools and equipment to other inmates (2F/80). In describing his daily routine in 2007, the claimant indicated that he spent his time talking to others, going to the gym/yard, and working (2F/97). On November 18, 2007, shortly before his DLI, his activities included not only work but "taking college courses in psychology and world religion through Lakeland college" (2F/116). A month later his daily routine include[d] writing letters, reading and working" (2F/119).

R. 18-19. As part of this credibility discussion, the ALJ stated that it was important to consider plaintiff's anxiety in light of the fact that he was living in a stressful environment. Here is the ALJ's explanation:

> The claimant was facing the stress associated with living in prison, sleeping with cellmates, exposure to violence, and lack of autonomy. As of his DLI he was only

3

> about halfway through his sentence. Those factors would likely produce symptoms of anxiety and depression in even the most well-adjusted individuals. While simply being in prison does not rule out the possibility of genuine depression and anxiety that could prevent work, the fact that the claimant was able to function as well as he did under those kind of stresses is not supportive of an inference that he would be unable to work, or even would have significant limitations on his ability to work, in a normal environment outside of prison as of December 2007.

R. 19. As a final credibility point, the ALJ noted that, although plaintiff made no "stark contradictions" or "outright misrepresentation[s]," his testimony was not "compelling or convincing" about his inability to work. The ALJ noted specifically that plaintiff's "claims that his [hand] tremors were severe and prevented him from doing many basic tasks with his hands is not consistent with the fact that he was fixing television sets while in prison." *Id.*

The ALJ lastly considered the medical opinions, noting that the state agency consultants had concluded that plaintiff did not have any severe impairment and that "[t]he record does not contain opinions from the claimant's therapist or other treating doctors indicating that the claimant would have work limitations." *Id.*

Plaintiff raises three main arguments for remand.[2] Before addressing each one individually, it is helpful to put them in a larger context. Plaintiff's criticisms are directed at only selected aspects of the ALJ's decision. Plaintiff ignored several of the reasons given for the decision. These included plaintiff's ability to engage in an active lifestyle in prison (*e.g.* fixing TVs and taking college courses); plaintiff's ability to get along with others; the lack of any medical opinion supporting plaintiff; and statements by therapists indicating that plaintiff's symptoms were in control or believed to be less serious than portrayed by plaintiff. By themselves, these unchallenged rationales provide substantial evidence for the ALJ's decision,

---

[2] In his opening brief, plaintiff only included one general argument heading—that "The ALJ's Decision Was Not Supported by Substantial Evidence"—and did not specifically itemize his arguments into separate sections. However, the Court has discerned three major arguments and will use this structure to simplify the analysis here.

and plaintiff's failure to address them in any serious way leaves a large hole in his argument.[3] With this point in mind, the Court addresses the three arguments.

First, plaintiff argues that the ALJ overlooked the seriousness of plaintiff's psychiatric symptoms (anxiety, hallucinations, nightmares, manic spells, and insomnia) for which he received "extensive and consistent psychiatric treatment" while in prison. This argument is unavailing in several ways. As a preliminary point, plaintiff has not argued that the ALJ ignored this evidence because, in fact, the ALJ acknowledged and discussed it in some detail. *See* R. 15 ("the exhibits contain extensive treatment notes from the facilities where the claimant was incarcerated"). Plaintiff concedes this general point in his opening brief. *See* Dkt. #9 at 4 (stating that the ALJ "acknowledged that Mr. Hoffman received therapy at times on a weekly to monthly basis and that his symptoms were persistent and fluctuated regularly") (citations omitted)

Plaintiff's first argument also misleadingly lumps disparate psychiatric symptoms into one homogenous pile. However, as the ALJ recognized, some of the alleged symptoms, such as anxiety and insomnia, were less serious whereas others, such as hallucinations and manic spells, were of the type typically viewed as being more severe. The ALJ basically took a two-pronged approach by first acknowledging that plaintiff suffered from the former symptoms but then concluding that the latter symptoms were less documented or frequent than plaintiff suggested. For example, the ALJ noted that one counselor doubted plaintiff's claim of having hallucinations or hearing voices. As for the alleged mania, the ALJ stated that "there are few notes indicating true manic symptoms, as what symptoms there were usually were either depressive or related to anxiety." R. 16. In sum, plaintiff's first argument largely boils down to the general claim that plaintiff went to therapy on a regular basis for many years. But it is not clear why this fact

---

[3] Plaintiff referred several times to the ALJ's "broad" or "blanket" assertions. Dkt. #9 at 7; Dkt. #15 at 1. But plaintiff did not develop arguments, nor provide evidence, to challenge several of the supposedly overbroad assertions.

demonstrates that plaintiff was disabled. Many full-time workers undergo counseling at some point in their working lives, and some of them even do so for years.

Second, plaintiff argues that the ALJ impermissibly concluded that plaintiff's anxiety and other symptoms might have been exacerbated by the stressful prison environment. Here again, plaintiff's argument ultimately reduces to a claim about what weight should be given to a particular point. Specifically, plaintiff conceded at several points in his briefs that prison *possibly* could have caused *some* increase in anxiety. *See* Dkt.#9 at 5 (opening brief: acknowledging that "prison could be a stressful environment initially"); Dkt. #15 at 1 (reply brief: "perhaps [prison] influenced his anxiety, but could it truly cause hallucinations?"). Moreover, as the Government argues, the claim that the prison environment is stressful is a common sense observation that courts have recognized in various other contexts. *See* Dkt. #14 at 9 (citing cases). Plaintiff tries to paint the ALJ into a corner by arguing that the ALJ found that plaintiff's anxiety was "*solely* attributed*" to being in prison. Dkt. #9 at 5 (emphasis added). But as demonstrated above, this is an unfair characterization that ignores the multiple other reasons offered by the ALJ. Although it is true that the ALJ stated at one point that the prison environment was an "important" factor, the Court finds that the other reasons offered by the ALJ would stand independently and would be sufficient even if the ALJ's observations about prison being stressful were ignored.

Third, plaintiff argues that the ALJ wrongly decided the case at Step Two by finding that plaintiff's impairments were not severe. This argument is not persuasive because, even if the ALJ prematurely decided the case at Step Two, any such error was harmless. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (the harmless error doctrine applies when the court can conclude with certainty that the ALJ would reach the same conclusion absent the error). This Court is confident that the ALJ would reach the same result if this case were remanded. In his

two briefs, plaintiff has not advanced a viable argument as to how he would qualify under the remaining steps. Although plaintiff seems to believe that he might meet a mental health listing—specifically, plaintiff states in a vague way that his anxiety problems were "consistent with" Listing 12.06 for anxiety and obsessive-compulsive disorders—plaintiff has not made any sustained argument to substantiate this point and, in particular, has not shown how he could meet the paragraph B criteria. As the Government argues, both the ALJ and State agency doctors found that plaintiff only had mild limitations in daily activities and social functioning and no limitations in concentration and no episodes of decompensation. In other words, he falls far short of having *marked* limitations in *two* of four categories. Finally, plaintiff has not pointed to any specific limitations that, if included in a residual functional capacity assessment, would reasonably suggest plaintiff could not work *any* full-time job.

Perhaps the best way to summarize the main points supporting the ALJ's decision is to quote the introduction to the Government's response brief. It is a paragraph long. As a good introduction to a legal brief should do, this one conveys much information in a short space, and does so by using vivid language and choice details to roadmap the rest of the brief. Here it is:

> Plaintiff Martin Hoffman claims that he became disabled in November 2002, when he began serving a long sentence for aggravated criminal sexual assault of a 12-year-old-girl. But Hoffman worked as a communications engineer trainer—a job that necessitated travel to various offices and conducting training on systems installation—right up to the time that he was imprisoned. He did not adduce credible evidence that he was unable to perform this job, even while under the strain of a criminal prosecution for a serious felony. While imprisoned, Hoffman worked as an electronic repairmen[,] checking out tools and equipment in the maintenance department. He took college courses in psychology and world religion and had good attendance and study habits. Hoffman reported some symptoms while imprisoned but they did not consistently interfere with his ability to work. State agency psychological consultant Howard Tin, Psy.D., reviewed all of the evidence Hoffman cites in his brief and concluded, as did the ALJ, that Hoffman did not have a severe mental impairment. No doctor who treated or examined Hoffman in prison opined that his mental impairments limited his ability to work. The denial of Hoffman's claim should be affirmed.

Dkt. #14 at 1 (record citations omitted). To be sure, plaintiff undoubtedly has quibbles with some of these characterizations. But on the whole, the main points have not been rebutted in plaintiff's two briefs. Therefore, plaintiff's arguments for a remand amount to a request for this Court to "reweigh [this same] evidence" and then "substitute [its] judgement for the ALJ's." *Alvarado v. Colvin*, 836 F. 3d 744, 747 (7th Cir. 2016). This is not a role this Court is permitted to play.

    For all these reasons, plaintiff's motion for summary judgment is denied, the Government's motion is granted, and the decision of the ALJ is affirmed.

Date: April 27, 2017                                By: _____
                                                              Iain D. Johnston
                                                              United States Magistrate Judge